IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| V. | * | Criminal No: 1:18-CR-00396-001 |
| | * | Sentencing: February 22, 2019 |
| **JOSEPH RILEY CURRY** | * | Judge: Anthony J. Trenga |
| Defendant(s). | * | |
| _____ | * | |

**DEFENDANT JOSEPH RILEY CURRY'S MEMORANDUM OF LAW
IN AID OF SENTENCING WITH OBJECTIONS TO THE
PRESENTENCE INVESTIGATION REPORT (PSR)**

**COMES NOW,** Defendant, **JOSEPH RILEY CURRY,** by and through his attorneys, and submits this position of the defendant with respect to sentencing factors, pursuant to section 6Al.2 of the United States Sentencing Guidelines and objections to the PSR pursuant to Fed. R. Crim. Proc. 32(i)(3)(B). Mr. Curry's sentencing memorandum is also incorporated herein.

**FACTUAL CORRECTIONS/OBJECTIONS TO PSR**

1. The defendant has a factual correction and/or objection to the Presentence Investigation Report. First, page 18 &19, paragraph 88, as it pertains to restitution for funeral expenses, which should be $4,750.92 and not $7,000 in reviewing the Declaration of victim losses attached.

**LEGAL CORRECTIONS/OBJECTIONS TO PSR**

2. The defendant has legal corrections and/or objections to the Presentence Investigation Report. First, page 11, paragraph 45 prior sentence pursuant to USSG 4A1.2(a). Second, overrepresentation of criminal history pursuant to USSG 4A1.3(b).

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

*"[S]urely, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his*

*sentencing, when his very future hangs in the balance.*"[1] Mr. Curry respectfully submits this memorandum requesting that the Court consider his entire life and all that he has done in contemplating a sentence "sufficient but not greater than necessary" to satisfy all of the statutory purposes of sentencing.

### THE COURT MUST IMPOSE A SENTENCE "SUFFICIENT BUT NOT GREATER THAN NECESSARY" TO COMPLY .WITH THE PURPOSES OF 18 U.S.C. § 3553

As the Court is well aware, the guidelines are now advisory only, that is, one among a **number of factors to be weighed by the sentencing court.** *United States v. Booker,* 543 U.S. 220 (2005); *United States v. Price,* 409 F.3d 436, 443 (D.C. Cir. 2005) (noting that *Booker* excised mandatory Guidelines provision of 18 U.S.C. § 3553(b) but that § 3553(a)'s specification of factors that guide federal sentencing, including application of Guidelines, remains in effect). As the *Price* Court stated, "[t]hese factors include, among others, the nature of the offense, the defendant's history, the need for the sentence to promote adequate deterrence and to provide the defendant with needed educational or vocational training, any pertinent policy statements issued by the Sentencing Commission, the need to avoid unwarranted disparities among similarly situated defendants, and the need to provide restitution to any victims." *Id.* at 442 (citing § 3553(a)).

The most important consideration for the District Court in sentencing Mr. Curry must be the directive of Congress to "impose a sentence sufficient but not greater than necessary, to comply with [the purposes of sentencing]". 18 U.S.C. § 3553(a). *See e.g., United States* v. *Minisro-Tapia* 470 F.3d 137, 142 (2d Cir. 2006); *United States* v. *Yopp,* 453 F.3d 770, 774 (6th Cir. 2006); *United States* v. *Rodriguez-Rodriguez,* 441 F.3d 767, 770 (9th Cir. 2006); *United States v. Ranum,* 353 F. Supp.2d 984, 986 (E.D.Wis. 2005). While the standard on appeal is whether the sentence is reasonable, that is

---

[1] *United States v. Adelson,* 441 F. Supp.2d 506 (S.D.N.Y. 2006) ("This elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor, 'the history and characteristics of the defendant'.")

2

not the standard for the District Court. *United States* v. *Collington,* 461 F.3d 805, 807 (6th Cir. 2006) ("a district court's mandate is to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)(2). Reasonableness is the *appellate* standard of review in judging whether a district court has accomplished its task."); *United States* v. *Foreman,* 436 F.3d 638, 644 n.1 (6th Cir. 2006) ("a district court's job is not to impose a 'reasonable' sentence. Rather, a district court's mandate is to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2). Reasonableness is the appellate standard of review in judging whether a district court has accomplished its task").

It is clear that in the post-Booker world of advisory Guidelines, the sentencing judge has broad discretion to impose a non-Guidelines sentence where appropriate after considering the pertinent § 3553(a) factors. As articulated recently by the Second Circuit, "[a]lthough the sentencing judge is obliged to consider all of the sentencing factors outlined in section 3553(a), the judge is not prohibited from including in that consideration the judge's own sense of what is a fair and just sentence under all of the circumstances. That is the historic role of sentencing judges, and it may continue to be exercised, subject to the reviewing court's ultimate authority to reject any sentence that exceeds the bounds of reasonableness." *United States v. Jones,* 460 F.3d 191, 195 (2nd Cir. 2006) (upholding non-Guidelines/ sentence of 15 months' imprisonment, which was 15 months below bottom of applicable range).

## ARGUMENT

After determining the sentence under the Guidelines, a District Court has a statutory duty to consider factors independent of the Guidelines in arriving at a final sentence that is in compliance with the sentencing mandate of §3553(a). Given the factors under §3553(a) present in this case, it is apparent that a Guidelines sentence or sentence within the guideline for Mr. Curry is substantively unreasonable. After *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005),

the sentencing judge must consider all relevant §3553(a) factors, including the applicable guideline range. Mr. Curry recognizes that because the Guidelines are advisory, the sentencing court has full discretion to impose a sentence independent of the Guidelines, but within the statutory range. *United States v. Hughes,* 396 F.3d 374, 377-78 (4th Cir. 2005); *Kimbrough v. United States,* 552 U.S. 85,570, 128 S.Ct. 558, 169 L. Ed. 2d 481(2007); *Gall v. United States,* 128 S.Ct. 586,597 n.6 (2007). He further recognizes that a district court's discretion to impose a statutory sentence outside the Guidelines is extremely broad and the resulting sentence will be upheld "as long as it is within the statutorily prescribed range and is reasonable." *Hughes,* 396 F.3d at 378; see also *United States v. Iskander,* 407 F.3d 232 (4th Cir. 2005); *United States v. Pierce,* 409 F.3d 228 (4th Cir. 2005); *United States v. Riggs,* 410 F.3d 136 (4th Cir. 2005). However, Mr. Curry contends that a guideline sentence is unreasonably lengthy, because it does not comply with the sentencing mandate of §3553(a).

    **A.**    **The §3553(a) Sentencing Mandate**

When sentencing a defendant, a district court is bound to follow the dictates of 18 U.S.C. §3553(a). Section 3553(a) is comprised of two distinct parts: the so-called "sentencing mandate" contained in the prefatory clause of §3553(a) and the "factors" to be considered in fulfilling that mandate. Those factors include:

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)    the need for the sentence imposed-

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)    to afford adequate deterrence to criminal conduct;

    (C)    to protect the public from further crimes of the defendant; and

    (D)    to provide the defendant with needed educational or vocational training, medical care,

or other correctional treatment in the most effective manner;

    (3)    the kinds of sentences available;

    (4)    the advisory guideline range;

    (5)    any pertinent policy statements issued by the Sentencing Commission;

    (6)    the need to avoid unwarranted sentence disparities; and

    (7)    the need to provide restitution to any victims of the offense.

18 U.S.C. §3553(a). Neither the statute itself nor *Booker* suggests that any one of these factors is to be given greater weight than any other factor. *Booker,* 543 U.S. at 245-46. However, all factors are subservient to §3553(a)'s mandate to impose a sentence not greater than necessary to comply with the four purposes of sentencing.

The overriding principle and basic mandate of §3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary," to comply with the four purposes of sentencing set forth in §3553(a)(2). This is the so-called "parsimony provision," which requires district courts to impose the minimum punishment needed to satisfy the purposes of sentencing - just punishment, deterrence, protection of the public and rehabilitation of the defendant. *See United States v. Williams,* 475 F.3d 468, 476-77 (2nd Cir. 2007); *United States v. Ferguson,* 456 F.3d 660, 667 (6th Cir. 2006); *United States v. Denardi,* 892 F.2d 269, 276-77 (3rd Cir. 1989). While district courts must in all cases "consider" the guideline range, *Booker,* 543 U.S. at 245-46, the guidelines do not subordinate the other:, factors in §3553(a). Rather, it is the parsimony provision that serves as "the guidepost for sentencing;, decisions *post-Booker." United States v. Ferguson,* 456 F.3d 660, 667 (6th Cir. 2006).

**Application of the Section 3553(a) Principles and Factors of this Case Compel a Variant Sentence**

While the Court must consider the Guidelines calculation as part of the sentencing process, the Guidelines merely "serve as one factor among several Courts must consider in

5

determining an appropriate sentence." *Kimbrough v. United States,* 552 U.S. 85, 90 (2007). Rather than simply impose a sentence within the Guidelines range, the Court must consider the whole range of factors listed in 18 U.S.C. 3553 and determine a sentence that is "sufficient but not greater than necessary, to accomplish the goals of sentencing." Id. at 101 (quoting 18 U.S.C. 3553). Indeed, the Court may not even "presume that the Guidelines range is reasonable,' but "must make an individual assessment based on the facts presented." *Gall v. United States,* 552 U.S. 38, 50 (2007). The sentencing Court has wide latitude to impose a sentence below the Guidelines range after considering the various factors as enumerated in 3553. In this case, the 3553(a) factors support a sentence that is far below the suggested Guidelines range. Mr. Curry should be sentenced to the mandatory minimum time to be served with supervised release. This would be considered "sufficient but not greater than necessary" to satisfy the statutory factors.

Mr. Curry pled guilty to Count 1: Conspiracy to Distribute a Mixture and Substance Containing a Detectable Amount of Heroin, a Schedule I controlled substance, resulting in Serious Bodily Injury and Death. The probation officer prepared a Presentence Report ("PSR"). The officer set the adjusted offense level at 40. That offense level when coupled with Mr. Curry's criminal history category of IV results in advisory guideline imprisonment range of 292 to 365 months in this case, with a mandatory minimum sentence of 240 months.

  **1.  The Nature and Circumstances of the Offense Compel a below the Guidelines Range Sentence**

One of the factors the Court is directed to consider under Section 3553 is the nature and circumstances of the offense. Here, the nature and circumstances of Mr. Curry's role in the offense, and prior contact with the Criminal Justice System, makes a variance sentence reasonable in this case.

6

The Court must consider the "nature and circumstances of the offense" in determining the sentence to be imposed. 18 U.S.C. 3553(a)(l). Because "atypical cases were not adequately taken into consideration" by the Guidelines "factors that may make a case atypical provide potential bases for departure. *Koon v. United States,* 518 U.S. 81, 94 (1996) (quoting Guidelines).

**2. The Circumstances, History and Characteristics of the Defendant Support a Sentence below the Guidelines Range**

In determining the particular sentence to be imposed, 18 U.S.C. 3553(a)(l) directs the Court to consider the "history and characteristics of the defendant." Mr. Curry has strong ties with his family and play an indispensable role in the lives of his parents and his siblings. (See letters in support). Accordingly, any sentence within the Guidelines range would be far greater than necessary to achieve the 3553 sentencing goals, and minimum time is warranted.

Mr. Curry has a history of alcohol and drug abuse which started at the age of 13 till his present incarceration. Mr. Curry incorporates by reference as if set forth here, page 14, paras. 64-69 of the PSR.

*(i) Mr. Curry's Character*

Courts may impose a sentence below the Guidelines range where, as here, the offense is at odds with defendant's life and character. *See United States v. Benkahla, 501 F.Supp. 2d 748, 761 (E.D.Va 2007)* (awarding downward variance where letters attest to defendant's "honor, integrity and moral character).

*(ii) Strong Family Bonds*

Under the 3553 analysis, family ties "are pertinent to crafting an appropriate sentence." Mr. Curry is extremely close with his immediate and extended family who have supported him throughout this entire process and will continue to do so. *See Benkahla, 501 F.Supp. 2d at 760* (awarding downward variance based on, among other things, defendant's "strong positive relationship with friends, family and the community). Joseph Riley Curry is very close to his

7

siblings and his parents. Mr. Curry is the rock of his family and the entire family leans heavily on each other, respects each other, and stresses the importance of putting family first.

Section 3553 also directs the Court to consider the circumstances and history of the Defendant when determining what sentence is appropriate.

While Mr. Curry has maintained some employment over some period of time, good relationship with his family, however, he stands before the Court today for sentencing for his participation in this offense. Mr. Curry incorporates by reference as if set forth here, pages 15-17, paras. 72-82; and pages 13 & 14, paras. 53-60. This history of redeemable qualities should be considered when determining what sentence is reasonable under § 3553.

**3. The Need to Avoid Unwarranted Sentencing Disparities**

The need to avoid unwarranted sentencing disparities is another consideration under Section 3553. Imposition of a sentence inside the guideline range would in this instance increase sentence disparities among defendants with similar records found guilty of similar conduct, rather than avoid such disparity, as called for by USSG.

The Federal Sentencing Guideline Manual Ch. 1, Pt. A. § 2 states that 'If...a particular case presents a typical features, the Act allows the court to depart from the guidelines and sentence outside the prescribed range."

The Court is required to consider relevant policy statements of the Sentencing Commission. 18 U.S.C. § 3553(a)(5). The Court is required to avoid unwarranted disparities in imposing a sentence. 18 U.S.C. § 3553(a)(6). It is also required to impose a sentence that will promote respect for the law. *Id. §* 3553(a)(2)(A).

(i) *A Sentence far below the Guidelines range is needed to avoid Unwarranted Disparity*

18 U.S.C. 3553(a)(B) instructs the Court to impose a sentence that avoids unwarranted disparities among defendants with similar records who have been found guilty of similar conduct. The elimination of sentencing disparity, which Congress determined was chiefly the result of a

8

discretionary sentencing regime was unquestionably Congress' principal aim. See *Feinberg, Federal Criminal Sentencing Reform: Congress and the United States Sentencing Commission, 28 Wake Forest L.Rev. 291, 295""29.6: (1993)* ("The first and foremost goal of the sentencing reform effort was to alleviate the perceived problem of federal criminal sentencing disparity. Quite frankly, all other considerations were secondary."); see also *Breyer, Federal Sentencing Guidelines Revisited, 2 Fed. Sentencing Rptr. 180 (1999)* ("in seeking 'greater fairness' Congress, acting in bipartisan fashion, intended to respond to complaints of unreasonable disparity in sentences - that is, complaints that differences among sentences reflected not simply different offense conduct or different offender history but the fact that different judges imposed the sentences" (emphasis added). As Senator Hatch, a central participant in the reform effort, has explained "The discretion that Congress had conferred for so long upon the judiciary and the parole authorities was at the heart of sentencing disparity." The role of Congress in sentencing: *"The United States Sentencing Commission, Mandatory Minimum Sentences and the Search for a certain and Effective Sentencing System, 28 Wake forest L. Rev. 185, 187 (1993)* (hereinafter Hatch) (emphasis added).

    (ii)    *Joseph Riley Curry's Criminal History is Overrepresented*

In this case, Mr. Curry's criminal history includes two drug related prior convictions when he was 24 years old and 27 years old and consisting mostly of heroin; petit larceny, a misdemeanor; and obstruct justice: without threats or force, a misdemeanor all while he was between 23-27 years old.

In this case the guideline range computed based on Mr. Curry's conduct in this case provides for greater than necessary punishment, and not in conformity with his involvement and/or conduct in this case, resulting from the overrepresentation of defendant's criminal history for reasons which are not warranted.

Deviation from the guideline computations is warranted because the overrepresentation of defendant's criminal history itself is a cause of unwarranted sentencing disparity on the determination of sentences appropriate for participants, as Mr. Curry in this case.

In *U.S. v. Bowser*, 941 F.2d 1019, (10th Cir. 1991), it was held that the nature and type of convictions did not firmly represent *Bowser's* placement in the Armed Career category, based on strength of offense and proximity of predicate offense convictions.

For all of these reasons, there is nothing "unreasonable" about declining, in the circumstances of this case, to treat the career offender guideline range as the yardstick by which to judge what term of imprisonment is minimally sufficient to satisfy the purposes of sentencing, or from which to judge the reasonableness either of the sentence recommended by the defendant, or the "sufficient, but not greater than necessary" term called for by the Sentencing Reform Act.

It is the position asserted on Mr. Curry's behalf that the overrepresentation of defendant's criminal history in this case is not reasonable and that deviation from it is fully warranted for the reasons stated.

Finally, the Court is respectfully requested to deviate from the range computed in the presentence investigation report to a term in the recommendation of the government and defendant as possible because of the unique circumstances of this case.[2]

*(iii)    Illegal Alienage*

Finally, a departure may be warranted if the defendant is a deportable alien. Deportable aliens are adventiously subjected to a harsher condition of imprisonment than an otherwise identical citizen.

The need to avoid unwarranted sentencing disparities is another consideration under Section 3553. Imposition of a sentence inside the guideline range would in this instance increase sentence disparities among defendants with similar records found guilty of similar conduct, rather than avoid such disparity, as called for by USSG. Mr. Curry who is not a citizen of the United States, and is subject to removal/deportation from the United States because of this conviction and as such

---

[2] *United States v. Moreland*, 366 F. Supp. 2d. 416 (S.D. W. Va. April 27, 2005) (Goodwin, J.) (where career offender guideline range was 360-life, sentencing defendant to 120 mandatory minimum where instant offense involved 7.85 grams of crack for which guideline range would have been 78-97 months, definition of "controlled substance offense" does not distinguish between distribution of single marijuana cigarette and drug kingpin, defendant's priors were relatively old and minor, and imposition of sentence 20 years longer would cost enormous amount of money).

will be incarcerated longer if sentenced within the Guidelines while he awaits deportation to his home country, Canada.

A departure may be warranted if the defendant is a deportable alien. According to *United States v. Renford George Smith,* 27 F. 3d 649 (D.C. Circuit 1994); *United States v. Gideon Cassells.* 66 F.3d 377 (4th Cir. W.Va. 1995), a departure from the federal sentencing guideline may be warranted for a deportable alien since a period of incarceration is harsher for illegal aliens as they are not entitled to privileges available to United States citizens, pursuant to the Bureau of Prison Guidelines.

The Federal Sentencing Guideline Manual Ch. 1, Pt. A. § 2 states that 'If ... a particular case presents a typical feature, the Act allows the court to depart from the guidelines and sentence outside the prescribed range."

In *Smith* 27 F. 3d at 655 the court held that "a downward departure may be appropriate where the defendant as a deportable alien is likely to cause a fortuitous increase in the severity of his sentence."

Mr. Curry's status as a "deportable alien renders him ineligible for benefits of 18 U.S.C. § 3624(c), which directs the bureau of prisons, to the extent practicable, to assure that prisoners spend part of the last 10% of their sentences under conditions (possibly including home confinement) that will afford the prisoner a reasonable opportunity to adjust and prepare for reentry into the community. *Id at 654*. The Bureau of Prisons regulations bar Mr. Curry (non United States citizen) from assignment to a community corrections center except in what appear to be rare circumstances. See Federal Bureau of Prisons, Program Statement 5100.04: Security Designation and Custody Classification Manual, Ch. 2-9 (June 15, 1992). *Id at 651*.

The Bureau of Prison policy will prevent Mr. Curry from being assigned to serve any part of his sentence in a minimum-security prison, unlike a United States citizen. Mr. Curry "a deportable alien will be assigned to a more drastic prison than otherwise solely because her

11

escape would have the extra consequence of defeating her deportation." *Id at 655.* Therefore, Mr. Curry's status as a deportable alien would have clearly generated increased severity and thus a proper subject of a departure." *Id.* The court in *Cassells* 66 F. 3d 317, also indicated that the district court has discretion to depart from the Federal Sentencing guidelines based on the above mentioned reasons. *See also* **18** U.S.C. § 3553(f).

> **4. The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law and to Provide Just Punishment for the Offense, to Afford Adequate Deterrence, to Protect the Public from Future Crimes and to Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment**

Some of the very statutory factors which are the ultimate guide to sentencing decisions post-*Booker* clearly argue in favor of less prison time, not more. With a defendant ultimately suffering from the stigma of conviction, for example, there is facially less need for the sentence imposed to protect the public from further crimes of the defendant, but to provide the defendant with needed educational or vocational or correctional training and/or treatment.

"Though punishing a particular individual may incapacitate him for a while and may deter others, as a general rule, the threat of punishment is an unproductive method for achieving behavioral change..... Most criminologists have concluded, instead, that it is an individual's perception of the probability of getting caught that serves as a greater than the severity of the sanction." James M**.** Lager, *Overcoming Cultures of Compliance to Reduce Corruption and Achieve Ethics in Government,* 41 McGeorge L. Rev**.**, 63, 70 (2009).

> (i) *Mr. Curry's Plea and Conviction act as Powerful Deterrent to Criminal Conduct*

While the Court must impose a sentence that afford adequate deterrence to criminal conduct, 18 U.S.C. 3553(a)(2)(B). It is not necessary to imprison Mr. Curry any more than a minimum time to be served to accomplish that goal. Many Courts have recognized that the collateral consequence of a trial and conviction - especially in a highly publicized case like here can serve as a powerful deterrent to potential criminals quote examples.

Research on deterrence and criminal sentencing also proves that, particularly for white collar criminals, "informal sanctions (such as social censure, shame, and loss of respect)" are "equally important a imprisonment is producing the deterrent outcome." *Zvi D. Gabbay, "Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime." 8 Cardozo J. Conflict Resol. 421, 448-49 (2007).* There is no empirical evidence that lengthy sentences provide any additional deterrent effect. See Id. (no evidence supporting "the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders"); *David Weisburd, et al., Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crime, 33 Criminology 587 (1995)* ("It has often been assumed by scholars and policy makers that white-collar criminals will be particularly affected by imprisonment. Our analysis suggest that this assumption is wrong, at least as regards official re-offending among those convicted of white-collar crimes in the Federal Courts. We find that prison does not have a specific deterrent impact upon the likelihood of re-arrest over a 126 month follow up periods.") Sentencing Courts have recognized the "considerable evidence that even relatively short sentences can have a strong deterrent effect on prospective 'white-collar' offenders." *Adelson, 441 F. Supp. 2d at 514.*

    *(ii)    A lot of Prison time is not needed to Protect the Public from further crimes by Mr. Curry*

The Court must impose a sentence that "protects the public from further crimes of the defendant 18 U.S.C. 3553(a)(2)(C). According to a recent study funded by the Department of Justice, recidivism is more likely when a defendant has a prior history, drug abuse problems, mental health issues, and challenges with unemployment, housing and transportation. Factors that decrease risk include having a strong social support system, marketable educational skills, a motivation to change and age. See *William Rhodes, et al Recidivism of Offenders on Federal Community Supervision at 1, Abt Associates, Dec 21, 2012* (prepared for Bureau of Justice

Statistics and Office of Probation and Pretrial Services).

>   *(iii)*     *18 US.C. 3553(a)(3) Instructs the Sentencing Court to Consider "the kinds of sentences available."*

Increasingly, Courts, criminal justice scholars, and prosecutors are recognizing that too many people go to too many prisons for far too long and for no truly good law enforcement reason. *Speech of Attorney General Eric Holder at the Congressional Black Caucus Foundation Criminal Justice Issues Forum, September 19, 2013,* available at http://www.justice.gov/opa/speech/attorney-general-eric-holder-delivers-remarks-congressional-black-caucus-foundation. In certain cases, a sentence of imprisonment may work to promote not respect but derision of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing."

For this reason, Courts have recognized that in certain appropriate cases, sentences other than incarceration - such as probation, home detention, community service, or some combination thereof - can provide a just punishment that is sufficient but not greater than necessary, to satisfy the 3553 factors. Such an alternative sentence has many societal benefits. A sentence of probation and community service costs significantly less than incarceration and can be a very effective means of reparation to society.

Nor can it promote respect for the law to give Mr. Curry a prison sentence that can quite credibly be viewed as greater than the sentence he likely would have received if there were no guideline as to his actual role and period of this offense. In light of the sentencing disparity outlined above, and the other factors outlined by section 3553 including the nature and circumstances of the offense/role and the character of Mr. Curry, the circumstances of this case, Mr. Curry requests that the Court sentence him below the guideline to the mandatory minimum for the offense of conviction, in this case.

The requested sentence under the Guideline and/or Statute reflects the seriousness of Mr. Curry's role, while at the same time accounting for the circumstances surrounding this offense and his individual circumstances. A sentence at the mandatory minimum time to be served operates to promote respect for the law and to provide just punishment for the offense, to afford adequate deterrence to protect the public and to provide Mr. Curry with needed educational or other correctional treatment and decrease the chances that he would return to Court.

Mr. Curry has already been incarcerated without bond since August 9, 2017. In terms of rehabilitation, Mr. Curry who has been separated from his family, has learnt his lesson from this case, and a strong deterrence value in the fact that Mr. Curry has already served about eighteen (18) months of any sentence that is being asked to be imposed by this Court with treatment.

Finally, the ends of justice will be served if Mr. Curry is sentenced below the Guideline and/or Statute, in this case, that is, the mandatory minimum time to be served.

## RESTITUTION/FORFEITURE

Restitution is yet to be determined in this case by this Court, but if any is imposed, should be joint and several with any other defendants and/or co-conspirators.

## FINE

The defense agrees with the PSR finding that Mr. Curry does not have adequate resources to pay any fine or the cost of incarceration or supervision upon release in this case. Mr. Curry incorporates by reference as if set forth here, page 18, para. 86 of the PSR.

Finally, there is no point in sentencing Mr. Curry within or at the top or over the guideline because he has not been found guilty of a traditional violent crime.

> ... the Sentencing Guidelines do
> not displace the traditional role
> of the district court in bringing
> compassion and common sense to the
> sentencing process.
> ... In areas where the Sentencing
> Commission has not spoken ...

15

> district Courts should not hesitate to use their discretion in devising sentences that provide individualized justice". *U.S. v. Williams,* 65 F. 3d 301, 309-310 (2d Cir. 1995).

Under the above-described circumstances, "individualized justice" for Mr. Curry is a sentence of mandatory minimum time to be served, with a period of supervised release.

## **CONCLUSION**

Joseph Riley Curry asks that this Court make factual findings and conclusions regarding each of the above arguments. Further, regardless of whether this Court finds the Guideline and statutory sentencing ranges in the PSR to be accurate, such penalty ranges are greater than necessary to achieve the goals of sentencing under 18 U.S.C. *§* 3553(a).

Accordingly, he respectfully requests that this Court take into consideration the above factors and sentence him to the lowest term sufficient to achieve the goals of sentencing under § 3553(a)(2).

**WHEREFORE,** for all the above stated reasons and for such other reasons offered at the sentencing hearing, the Defendant, **JOSEPH RILEY CURRY,** respectfully requests that this Court make such requested findings and consider the combination of sentencing factors herein.

Respectfully Submitted,

THE IWEANOGES FIRM, P.C.        Joseph Riley Curry
                                Defendant by Counsel

By: /S/JohnOIweanoge/S/_____
    John O. Iweanoge, II
    IWEANOGE LAW CENTER
    1026 Monroe Street, NE
    Washington, DC 20017
    Phone:  (202) 347-7026
    Fax:    (202) 347-7108
    Email: joi@iweanogesfirm.com
    Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 19th day of February, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

David A. Peters, AUSA
United States Attorney's Office
for the Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314

Dated: 19th day of February, 2019.  /S/JohnOIweanoge/S/
                                                                                                   Of Counsel to Defendant